UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x
                             :

EMMANUEL BLAKE & WILLIAM     :
BRYANT,
                             :

        Plaintiffs,    :

                             :   05 Cv. 6652 (BSJ)

        v.          :

                             :   **Opinion & Order**

CITY OF NEW YORK, ET. AL.,   :

                           :

        Defendants.    :

                           :
------------------------------x

**BARBARA S. JONES**
**UNITED STATES DISTRICT JUDGE**

Before the Court are (1) Defendants' Motion for Summary Judgment with respect to Plaintiffs' claim that use of a dog can constitute deadly force; (2) Defendants' motions <u>in limine</u> for qualified immunity as to Plaintiffs' excessive force claims, and for good faith and governmental immunity as to Plaintiffs' assault and battery claims; and (3) Plaintiffs' Motion to Strike the Affidavit of Lieutenant Carlos Valdez and preclude his testimony at trial.

As explained in greater detail below, deadly force is simply an instance of excessive force, which is properly evaluated under the Fourth Amendment's objective reasonableness test. Because neither party has moved for summary judgment as to excessive force liability, and because there are genuine issues of material fact as to excessive force liability, the

question of excessive force will be submitted to the jury.  The
Court will not include a deadly force instruction in its jury
charge.

Defendants' motions in limine for qualified immunity, good
faith immunity, and governmental immunity are DENIED with leave
to renew after trial.  Plaintiffs' Motion to Strike the Valdez
Affidavit and preclude his testimony at trial is DENIED.

**I. Background & Procedural History**

The Court recounts only those facts necessary for the
purposes of the instant Motions and construes all facts in the
light most favorable to the Plaintiffs.  Emmanuel Blake, William
Bryant ("Plaintiffs") and another individual entered a
maintenance garage in Brooklyn sometime during the evening of
August 6, 2004.  At 12:20 a.m., someone called 911 and reported
a suspected burglary at the garage.  When the police arrived at
the garage, the third individual fled.  Blake and Bryant hid
from the police in an air ventilation shaft in the wall of a
room in the basement of the garage.  The cover to the
ventilation shaft was approximately five feet up the wall from
the floor.  Detective William Unger, Detective Daniel Sprague,
and Officer Lawrence Zacarese searched for Blake and Bryant with
the aid of Officer Zacarese's police canine, "DJ."  After
searching for nearly an hour, the officers found Blake and
Bryant and told them to exit the ventilation shaft.  Bryant left

the shaft first.  Here the parties' stories diverge.  Defendants allege that Bryant was struggling with Sprague and Unger on the ground, and that Bryant's hands were not visible.  Plaintiffs allege that Bryant was not struggling with Unger and Sprague, other than by moving to avoid their blows, and that Bryant's hands were visible.

In any event, Zacarese instructed DJ to "get" Bryant.  DJ bit Bryant on the right leg.  The officers then handcuffed him.  Sprague and Unger then told Blake to exit the ventilation shaft.  Blake did so.  Again, the parties dispute whether Blake was struggling with Unger and Sprague on the ground and whether Blake's hands were visible.  Zacarese then commanded DJ to "get" Blake.  Plaintiffs allege that DJ bit Blake on the face, upper neck, and both arms.  Defendants allege that DJ bit Blake only on the left arm.

On July 25, 2005, Blake and Bryant commenced this civil action alleging, inter alia, assault, battery, and violations of their Fourth Amendment right to be free from unreasonable searches and seizures pursuant to 42 U.S.C. § 1983.  Plaintiffs did not specifically plead deadly force as a separate cause of action in their Complaint, and the Complaint contains no reference to deadly force.  On September 14, 2006, the parties submitted a Joint Pretrial Order.  In that Order, the parties listed three types of claims arising under 42 U.S.C. § 1983,

3

namely: Fourth Amendment Excessive Force, Fourth Amendment Deadly Force, and Fourth Amendment Failure to Intervene.  On November 6, 2006, Plaintiffs sent a letter to the Court requesting that the Court include a deadly force instruction in its jury charge. This case was originally scheduled to proceed to trial on December 11, 2006 but was adjourned until March 19, 2007.  On March 5, 2007, Plaintiffs moved in limine for a deadly force instruction.  At oral argument on March 13, 2007, the Court reserved decision on the in limine motions, adjourned trial again, and instructed the parties that the Court would consider the deadly force issue only on a motion for summary judgment. On April 12, 2007, Defendants moved for summary judgment with respect to Plaintiffs' claim that use of a dog can constitute deadly force.  On April 30, 2007, the Supreme Court issued its opinion in Scott v. Harris, 550 U.S. ____, 127 S. Ct. 1769 (2007).  Plaintiffs submitted their Opposition on May 21, 2007, and Defendants submitted their Reply on May 25, 2007.[1]

## II. DISCUSSION

### A. Legal Standard

A court can grant summary judgment only if "the pleadings, depositions, answers to interrogatories, admissions on file, together with the affidavits, if any, show that there is no

---

[1] The first mention of Scott comes in Defendants' Reply.  Plaintiff did not request permission to submit a surreply.

genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  The moving party must "demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  If the moving party does so successfully, the non-moving party must present "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(c). The party opposing summary judgment cannot rely on "conclusory statements or on contentions that the affidavits supporting the motion are not credible." Ying Jang Gan v. City of New York, 996 F.2d 522, 535 (2d Cir. 1993).  The court must draw all reasonable inferences and resolve all ambiguities in favor of the non-movant.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

**B. Deadly Force**

In their Memorandum in Support of their Motion for Summary Judgment, Defendants ask the Court to decide as a matter of law that the use of a properly trained police dog to apprehend a suspect by biting cannot constitute deadly force, and on that basis, to grant summary judgment in their favor as to that claim.[2]  In their Response, Plaintiffs argue that a properly

---

[2] While the Second Circuit has not decided the question, several other circuits have held that a properly trained police dog cannot, as a matter of law, constitute deadly force.  See, e.g., Dunnigan v. Noble, 390 F.3d 486, 492 n. 8 (6th Cir. 2004) ("No federal appeals court has held a properly trained police dog is an instrument of deadly force."); Robinette v. Barnes,

trained police dog can constitute deadly force, and they ask the Court to submit the deadly force question to the jury.[3]

This was an important issue before <u>Scott</u> because jurors were instructed to apply more stringent standards in deadly force cases than in cases that did not involve deadly force. See <u>Tennessee v. Garner</u>, 471 U.S. 1, 3 (1985). Essentially, the <u>Garner</u> standards made it more difficult for defendants who use deadly force to justify their actions as reasonable. In <u>Scott</u>, the respondent claimed that <u>Garner</u> set forth three preconditions that must be met in order for the use of deadly force by the police to survive Fourth Amendment scrutiny: (1) the suspect must have posed an immediate threat of serious physical harm to the officer or others; (2) deadly force must have been necessary to prevent escape; and (3) the officer must have given the suspect some warning if feasible.[4]   <u>Scott</u>, 127 S. Ct. at 1777.

---

854 F.2d 909, 912 (6th Cir. 1988)("[W]e find that the use of a properly trained police dog to apprehend a felony suspect does not carry with it a 'substantial risk of causing death or serious bodily harm [i.e. deadly force].'"); <u>Kuha v. Minnetonka</u>, 365 F.3d 590, 598 (8th Cir. 2004) ("[T]he use of a properly trained police dog in the course of apprehending a suspect does not constitute deadly force.").

[3] Plaintiffs also contest whether the police dog in this case was properly trained. This does constitute a genuine issue of material fact that would prevent the Court from deciding the instant Motion for Summary Judgment in Defendants' favor.

[4] Plaintiffs' proposed jury charge states that deadly force is reasonable only where (1) a police officer has probable cause to believe that the suspect poses a significant threat of death or serious physical injury to the officer or others, and (2) where there are no non-deadly alternatives.  See <u>Tennessee v. Garner</u>, 471 U.S. 1, 3 (1985); <u>Cowan v. Breen</u>, 352 F.3d 756, 762 (2d Cir. 2003); <u>Brower v. County of Inyo</u>, 884 F.2d 1316, 1317-18 & n.1 (9th Cir. 1989).

However, the Supreme Court emphasized in <u>Scott</u> that "<u>Garner</u> did not establish a magical on/off switch that triggers rigid preconditions whenever an officer's actions constitute 'deadly force.' <u>Garner</u> was simply an application of the Fourth Amendment's 'reasonableness' test." <u>Id</u>; <u>see also</u> <u>Willis v. Oakes</u>, No. 06 Civ. 0015, 2007 U.S. Dist. LEXIS 44137, at *12-13 (D. Va. June 19, 2007) (citing <u>Scott</u>). When evaluating the use of any type of force -- deadly or otherwise -- courts should apply the "objective reasonableness" standard of <u>Graham v. Conner</u>, 490 U.S. 386, 388 (1989). <u>Id.</u> at 1777-78. Under <u>Graham</u>:

> Determining whether the force used to effect a particular seizure is "reasonable" under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake. . . . Because the test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application, however, its proper application requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.

<u>Graham</u>, 490 U.S. at 396 (internal quotation marks and citations omitted). As noted above, deadly force is simply a type of excessive force. No separate legal standard applies to cases involving deadly force. Like any other excessive force claim, cases involving deadly or potentially deadly force should be

7

evaluated under the <u>Graham</u> reasonableness test.  <u>Scott</u>, 127 S.
Ct. at 1777-78.  ("Although respondent's attempt to craft an
easy-to-apply legal test in the Fourth Amendment context is
admirable, in the end we must still slosh our way through the
factbound morass of 'reasonableness.').  Here, as in <u>Scott</u>, the
Court has no need to decide as a matter of law whether the
police used deadly force.  <u>Id.</u> at 1778 ("Whether or not
[Defendants'] actions constituted application of 'deadly force,'
all that matters is whether [Defendants'] actions were
reasonable.")

     Accordingly, the Court need only craft a charge which will
help a jury decide whether the force used in this case was
reasonable under all the circumstances.  The Court will explain
that, in conducting this analysis, the jury may *consider* the
<u>Graham</u> factors, namely, the severity of the crime; whether
Plaintiffs posed an immediate threat to the safety of the
officers; and whether the Plaintiffs actively resisted arrest.
<u>Graham</u>, 490 U.S. at 396.  If appropriate, the Court may instruct
the jury to consider additional factors as requested by the
parties.  The Court will advise the jury that the objective
reasonableness inquiry is fact-specific, so the jury may
consider any other aspects of this case that inform the
reasonableness analysis.

The Court will not instruct the jury as to the definition of deadly force or the specific circumstances under which deadly force is or is not reasonable.  That said, both sides may present evidence as to the amount of force a police dog can exert.  Plaintiffs may present evidence that the police dog in this case could have killed Plaintiffs.  Defendants may present evidence that the dog in this case could not have -- or was highly unlikely to have -- killed Plaintiffs.  The parties may then argue that it was reasonable or unreasonable to use DJ under the circumstances of this case.  But the Court will not instruct the jury as to deadly force.

### C. Excessive Force Claims

Neither party has moved for summary judgment with respect to Defendants' excessive force claims, and in any event, the Court finds genuine issues of material fact as to those claims. Whether, and to what extent, Plaintiffs were struggling with or resisting the officers and whether their hands were visible are genuine issues of material fact.  If Plaintiffs were not struggling, and if their hands were visible, then a reasonable jury could find that the use of a police dog was objectively unreasonable and therefore constituted excessive force. Accordingly, the question of excessive force will be submitted to the jury.

### D. Qualified Immunity

Defendants move in limine for qualified immunity as to Plaintiffs' excessive force claims.  For the following reasons, genuine issues of material fact preclude a determination of qualified immunity.

### 1. Applicable Law

The threshold question in a qualified immunity analysis is whether the facts, viewed in the light most favorable to the plaintiff, show a constitutional violation.  Saucier v. Katz, 553 U.S. at 201.  Here, this inquiry is simply whether the degree of force used was objectively unreasonable.  Graham, 490 U.S. at 397.  The Court has already addressed this question and determined that there are genuine issues of material fact as to whether the force used in this case was objectively unreasonable.  See supra Part II.C.

The second portion of the inquiry focuses on "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Cowan v. Breen, 352 F.3d 756, 761 (2d Cir. 2003).  "Police officers who violate a plaintiff's constitutional rights are nevertheless entitled to qualified immunity if their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Stephenson v. Doe, 332 F.3d 68, 77 (2d Cir.

2003).  This is a purely legal inquiry that turns on whether "the law put the officer on notice that his conduct would be clearly unlawful."  Id.  As such, "the ultimate legal determination of whether qualified immunity attaches . . . is a question of law best left for the court to decide."  Stephenson, 332 F.3d 80-81.[5]

### 2. Qualified Immunity as to Deadly Force

As explained above, deadly force is simply a type of excessive force.  Accordingly, the Court has no need to decide whether the police officers in this case are entitled to qualified immunity with respect to deadly force.[6]

### 3. Qualified Immunity as to Excessive Force

---

[5]    Claims that an officer made a reasonable mistake of fact that justified the use of force go to the question of whether the plaintiff's constitutional rights were violated, not the question of whether the officer was entitled to qualified immunity.  The qualified immunity inquiry, by contrast, concerns an officer's mistake as to what the law requires and acknowledges that reasonable mistakes can be made as to the *legal* constraints on particular police conduct.

Stephenson, 332 F.3d at 78-79 (internal quotation marks and citations omitted).

[6]  Even if deadly force and excessive force were independent claims, it is not clear that the Court could have granted the officers qualified immunity with regard to the deadly force claims but not the excessive force claims.  Courts do not parse the qualified immunity analysis so finely.  Officers are either entitled to qualified immunity for their actions or they are not entitled to qualified immunity at all.  See Anderson v. Creighton, 483 U.S. 635, 639, 643 ("[W]e have been unwilling to complicate qualified immunity analysis by making the scope or extent of immunity turn on the precise nature of various officials' duties or the precise character of the particular rights alleged to have been violated.  An immunity that has as many variants as there are modes of official action and types of rights would not give conscientious officials that assurance of protection that it is the object of the doctrine to provide.")

Although Defendants do not raise the issue in their Motion for Summary Judgment, they move in limine for qualified immunity as to Plaintiffs' excessive force claims.  The same disputed issues of fact that preclude summary judgment on liability for the excessive force claims also preclude a determination of qualified immunity for those claims.  It is unclear whether, and to what extent, Plaintiffs were struggling with or resisting the officers, and whether their hands were visible.  The Court cannot decide as a matter of law that the officers reasonably believed that their actions were lawful without a determination as to the underlying facts.  Viewed in the light most favorable to Plaintiffs, the facts do not support qualified immunity.  If Plaintiffs were not struggling, and if their hands were visible, then the officers could not have reasonably believed that using a police dog was lawful.  Accordingly, Defendants' motion in limine for qualified immunity as to excessive force is DENIED with leave to renew after trial.

### 4. Procedural Issues for Qualified Immunity

The Second Circuit disfavors sending the qualified immunity issue to the jury because it is a complex, purely legal question that is likely to cause confusion.  See Cowan, 352 F.3d at 763; Stephenson, 332 F.3d at 80-81.  In accordance with the procedures outlined in Cowan and Stephenson, the Court will charge the jury on excessive force but not qualified immunity.

The Court will submit special interrogatories to the jury on the central factual issues in this case.  If the jury determines that the officers used excessive force, and if Defendants then renew their motion for qualified immunity, the Court will determine as a matter of law whether qualified immunity attaches based on the answers to the special interrogatories.

The parties are instructed to submit proposed special interrogatories and revised verdict forms on or before July 16, 2007.

### 5. Good Faith and Governmental Immunity

For the same reasons discussed supra with respect to qualified immunity, genuine issues of material fact preclude good faith or governmental immunity with respect to Defendants' assault and battery claims.  Accordingly, Defendants' motions in limine for good faith and governmental immunity are DENIED with leave to renew after trial.

### E. Motion to Strike

Plaintiffs have moved to strike the Affidavit of Lieutenant Carlos Valdez and preclude his testimony.  Lt. Valdez supervised the training and certification of Officer Zacarese and DJ. Plaintiffs argue that they were only notified that Lt. Valdez was a potential witness after Defendants submitted the instant Motion for Summary Judgment in violation of Rule 26(a) and Rule 26(e)(1).  However, Plaintiffs were on notice that Lt. Valdez

13

was a potential witness as early as March 27, 2006, when
Defendants produced all of DJ's training records.  The training
records identify the individuals involved in the training of
Officer Zacarese and DJ, including Lt. Valdez.  At the time,
fact discovery was still open and Plaintiffs had not yet noticed
any depositions in this case.  Plaintiffs knew that DJ's
training could be an issue in this case, and they could have
noticed Lt. Valdez's deposition before the close of fact
discovery.

Accordingly, Plaintiffs' Motion to Strike is DENIED.

**III. Conclusion**

For the foregoing reasons, the question of excessive force
will be submitted to the jury, and the Court will not include a
deadly force instruction in its jury charge.

Defendants' motions _in limine_ for qualified immunity, good
faith immunity, and governmental immunity are DENIED with leave
to renew after trial.  Plaintiffs' Motion to Strike the Valdez
Affidavit and preclude his testimony at trial is DENIED.

The Court will hear oral argument with respect to the
remaining _in limine_ motions as previously scheduled on July 3,
2007 at 2:00 PM.  Trial will begin as previously scheduled on
July 16, 2007 at 10:00 AM.

SO ORDERED:


Dated:   New York, New York
         July 3, 2007


BARBARA S.  JONES
UNITED STATES DISTRICT JUDGE

MAILED / FAXED TO:

COUNSEL FOR PLTFF(S): ✓
COUNSEL FOR DFT(S): ✓
PLTF PRO SE:
DFT PRO SE:
DATE: 7/3/07
BY:  MW